Stevan R. Baxter #12027
SKOUBYE NIELSON JOHANSEN & BAXTER, LLC
999 East Murray Holladay Road, Suite 200
Salt Lake City, Utah 84117
Telephone: (801) 365-1030
Facsimile: (801) 365-1031
Email: stevan@snjblaw.com
*Attorney for Defendants*

Additional attorneys in signature block at the end of the brief.

---

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| LISA HACKFORD, individually and as Personal Representative of the Estate of Todd Killian; and BRANDON HACKFORD, as Trustee of the TripleKRanch Trust,<br><br>Plaintiffs,<br><br>v.<br><br>SCARLET LAND SERVICES, LLC, a Texas limited liability company; BRENT PRESTON; CAMERON KULBETH; CASEY HART; J. MARCUS DAVIS; BLC PRESTON FAMILY PARTNERSHIP, LLC; KULBETH FAMILY PARTNERSHIP, LLC; KCH HART FAMILY PARTNERSHIP, LLC; AND DOES 4-10,<br><br>Defendants. | Case No. 2:25-cv-00520-DAK-CMR<br><br>**DEFENDANTS' PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

## RELIEF SOUGHT AND GROUNDS FOR RELIEF

Plaintiff amended his complaint to add as defendants Brent Preston, Cameron Kulbeth, Casey Hart (collectively, the New Defendants), whom he describes as functionally officers of the defendant named in the original complaint, Scarlet Land Services, LLC. He also added BLC Preston Family Partnership, LLC, Kulbeth Family Partnership, LLC, and KCH Hart Family Partnership, LLC (collectively, the Family Partnerships). To justify the claims against those defendants, Plaintiff also added Racketeer Influenced and Corrupt Organization (RICO), civil-conspiracy, and unjust-enrichment claims, along with assertions that the New Defendants and Family Partnerships are liable on Plaintiff's existing tort and contract theories.

The law does not permit most of those new theories. The RICO claim is legally untenable because Congress has forbidden RICO claims based on allegations that sound in securities fraud, as Plaintiff's RICO allegations do. The civil-conspiracy allegations fail to state a claim because the intracompany conspiracy doctrine precludes finding a conspiracy between an entity's owners, officers, and employees based on the work they do for the entity. And the complaint does not state a viable claim against the New Defendants or Family Partnerships on Plaintiff's existing theories, either directly or as a matter of vicarious liability.

Defendants therefore move for dismissal of the RICO and civil-conspiracy claims as to all defendants, and of all but the unjust-enrichment claim as to the New Defendants and Family Partnerships.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 4

I. Plaintiff's RICO claim should be dismissed. ..... 5

A. The royalty leases and royalty-interest assignments on which the RICO claim turns are securities. ..... 6

1. The earlier royalty leases are securities. ..... 6

2. The term assignment is a security. ..... 7

B. RICO's securities-fraud bar bars Plaintiff's claim. ..... 11

II. Plaintiff's Civil Conspiracy Claim Should Be Dismissed. ..... 11

III. The remaining claims against the New Defendants should be dismissed. ..... 15

A. Plaintiff does not plausibly plead fraud against the New Defendants. ..... 15

B. Plaintiff's contractual claims against the New Defendants are not viable because they are not parties to the assignment. ..... 18

C. The conclusory assertion of vicarious liability does not justify the claims against the New Defendants ..... 19

IV. The Third Amended Complaint makes no allegations to support the fraud and contract claims against the Family Partnerships. ..... 19

CONCLUSION ..... 20

## INTRODUCTION

Plaintiff's Second Amended Complaint sought to transform his dispute with Scarlet Land Services and one of its employees into a wide-ranging conspiracy, adding several new defendants along with a RICO claim and a civil-conspiracy theory. Faced with the reality that his broad reimagining of the case was neither adequately pled nor legally viable, Plaintiff filed a *Third* Amended Complaint, hoping to address the deficiencies. It is no more viable.

The RICO claim should be dismissed because RICO does not allow claims that sound in securities fraud. Plaintiff's royalty interest is a security, and he claims that Scarlet fraudulently persuaded his sister to sell the interest for an indefinite term. Thus, RICO's securities-fraud bar squarely applies.

Plaintiff's attempt to base a civil-conspiracy claim on the ordinary operation of a business is also untenable. Under the intracompany conspiracy doctrine, an entity's owners, officers, employees, and agents do not "conspire" when they do the entity's work, whether the entity is named as a co-conspirator or not.

Most of Plaintiff's other claims against the New Defendants (Brent Preston, Cameron Kulbeth, and Casey Hart) should be dismissed as well. Plaintiff does not state viable fraud claims against any of the New Defendants. He cannot bring contract claims against people with whom he has no contract. And he provides no basis for holding them vicariously liable for Scarlet's or its employee's alleged torts.

The analysis is even more straightforward for the Family Partnerships. Their alleged receipt of royalty revenue alone cannot support most of Plaintiff's claims.

For those reasons, the Court should dismiss the RICO and civil-conspiracy claims altogether, and it should dismiss all but the unjust-enrichment claim against the New Defendants and Family Partnerships.[1]

**BACKGROUND**

Scarlet Land Services, LLC invests in fractional oil and gas interests, offering landowners cash up front in exchange for term assignments of royalty interests in possible future oil and gas production. *See* Third Amended Complaint ¶ 29; Exs. A-B. It made one such offer to Lisa Hackford, who was responsible for a property in Duchesne County as representative of a family member's estate. TAC ¶¶ 28-29. The property's prior owner had leased mineral interests to a company in exchange for a 1/8 royalty interest in oil and gas production. TAC ¶¶ 23-24.

Scarlet offered Lisa $480,000 in exchange for a term assignment of the royalty interest that would run for one year, "and as long thereafter as oil, gas or other minerals or either of them, is produced or mined." TAC Exs. A-B. The offer excluded one existing well, and Lisa negotiated to exclude a second well before agreeing to the assignment. TAC ¶¶ 63, 69, 132. Scarlet promptly wired her $480,000. TAC ¶ 144. A year later, Lisa contacted Scarlet seeking the return of the royalty interests. TAC ¶ 165. But because oil and gas continued to be produced on the property, the assignment's term had not ended. TAC ¶ 166.

Lisa later conveyed the property and all claims relating to it to her brother, Brandon Hackford, the Trustee of the TripleKRanch Trust. TAC ¶ 244-46.

[1] Defendants do not move to dismiss the unjust-enrichment claim. Although Defendants dispute Plaintiff's allegations, accepting them as true, Utah law and this Court's denial of the earlier motion to dismiss, Doc. 37, taken together, permit Plaintiff's unjust-enrichment theory to survive at this stage of the case.

The Hackfords then filed this lawsuit in state court against Scarlet and the "agent, employee, or other representative of Scarlet" with whom Lisa had spoken, J. Marcus Davis, TAC ¶ 17, seeking damages and contract remedies. The defendants removed the case to this Court and moved to dismiss. Docs. 1, 18. The Court dismissed Lisa's claims because she had assigned them to her brother, but it otherwise denied the motion and allowed Plaintiff's claims to proceed. Doc. 37.

After some discovery, Brandon Hackford has twice amended the complaint to expand the scope of this suit. He added the New Defendants, Brent Preston, Cameron Kulbeth, and Casey Hart, along with Family Partnerships and John Does that allegedly received distributions from Scarlet. TAC ¶¶ 12-14. The New Defendants are described as, effectively, Scarlet's owner-operators, with the complaint saying that they "have exercised complete control over Scarlet's purported managers, contractors, and employees" and received the proceeds of its operations. TAC ¶¶ 16, 160. Plaintiff alleges that the three New Defendants helped draft the "templates" that were used for the letter and assignment contract. In support of that allegation, Plaintiff attaches an email in which the New Defendants review a "Term Royalty Deed Template" and "tweak[]" it to "eliminate[] any ambiguity." TAC ¶¶ 74, 243, Ex. C. More abstractly, Plaintiff asserts that all defendants "fully participated in the fraudulent acts and omissions alleged herein," TAC ¶ 195, and offers general allegations that the New Defendants directed Scarlet's and Davis's work, *e.g.* TAC ¶¶ 118, 131.

Plaintiff also added RICO, civil-conspiracy, and unjust-enrichment claims. For RICO, he alleges that, starting in 2013, Defendants engaged in a pattern of mail and wire fraud to obtain royalty interests. TAC ¶¶ 309-21. The civil-conspiracy claim turns on the allegation that the New Defendants and one of their company's employees conspired to commit fraud.

TAC ¶¶ 303-08. And the unjust-enrichment claim seeks equitable imposition of a constructive trust on money received from the assigned royalty interest. TAC ¶¶ 322-28.

## LEGAL STANDARD

"[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The court cannot accept mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Instead, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

The RICO and civil-conspiracy claims fail as a matter of law. And Plaintiff does not plead any plausible basis for extending his earlier claims to the New Defendants, let alone to their Family Partnerships. Those claims should be dismissed for the following reasons.

First, RICO's securities-fraud bar forbids reliance "upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation" of RICO. 18 U.S.C. § 1964. The complaint alleges fraud in connection with two instruments that are securities under federal law: royalty leases that Defendants purchased in the early years of their alleged scheme, and term assignments of royalty interests like the one they purchased from Lisa Hackford. RICO's securities-fraud bar thus forecloses their claim.

Second, Plaintiff's civil-conspiracy claim also runs into a settled legal rule: Since a company is a single legal entity, its owners, officers, employees, and agents do not "conspire"

when they do its work. That rule precludes Plaintiff's attempt to turn allegations of fraud against Scarlet into a conspiracy.

Third, Plaintiff's allegations as to the New Defendants fail to state a fraud claim with particularity under Rule 9(b), and they cannot state contractual claims, such as rescission and reformation, against individuals who are not parties to the contract. Nor can Plaintiff bring the New Defendants into this case through the bare assertion that they should be held vicariously liable for the conduct of Scarlet's employee or agent. That conclusory assertion of vicarious liability is not a factual allegation that must be taken as true on a motion to dismiss. And the legal assertion of vicarious liability is wrong as a matter of law because it ignores the "limited liability" nature of LLCs, which Plaintiff cannot simply plead around.

Fourth, Plaintiff makes no allegation regarding the Family Partnerships that could be the basis for a tort or contract claim.

## I. Plaintiff's RICO claim should be dismissed.

Congress enacted RICO "for the purpose of 'seeking the eradication of organized crime in the United States.'" *Beck v. Prupis*, 529 U.S. 494, 496 (2000) (brackets omitted) (quoting Pub. L. 91-452, 84 Stat. 922, 923). But the plaintiffs' bar soon sought to stretch RICO well beyond its purpose, elevating "fraud to RICO violations because RICO offered the potential bonanza of recovering treble damages." *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999). The gap between eradicating organized crime and the RICO claims being pursued was especially common in securities-fraud cases, so Congress "amended RICO to provide that 'no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of'" RICO. *Bixler v. Foster*, 596 F.3d 751, 759 (10th Cir. 2010) (quoting Pub. L. No. 104-67, § 107, 109

Stat. 737, 758). That provision bars Plaintiff's RICO claim here because the claim relies on the purchase of royalty-interest assignments and royalty leases, both of which are securities.

### A. The royalty leases and royalty-interest assignments on which the RICO claim turns are securities.

Whether the royalty leases and term assignments are securities turns on the definition of "security" in the Securities Act and Exchange Act. Where the "instrument involved" in a transaction falls "plainly within the statutory definition" of security, that is the end of the analysis—the instrument is a security. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 690 (1985).

The Exchange Act defines a security to include any "certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease." 15 U.S.C. § 78c(a)(10). The Securities Act similarly defines the term to include any "fractional undivided interest in oil, gas, or other mineral rights." 15 U.S.C. § 77b(a)(1). The earlier oil and gas royalty leases Defendants purchased and the term assignment of Plaintiff's partial royalty interest fit both definitions.

#### 1. The earlier royalty leases are securities.

In the parties' motion-to-dismiss briefing with respect to the Second Amended Complaint, the only disagreement with respect to the securities-fraud bar turned on whether a 1/8 royalty interest must be further divided before it qualifies as a security. *See* Doc. 72 at 28-34. That atextual requirement does not exist for the reasons stated below. But the question is now a moot point. To address Defendants' argument that the Second Amended Complaint failed to allege a pattern of racketeering activity, Plaintiff added allegations that the purchase of the term assignment here was part of a continuing course of conduct involving the purchase of royalty interests that began in 2013. Doc. 68 ¶¶ 27-34. The earlier

royalty leases on which Plaintiff's RICO claim now relies did further fracture the lessors' royalty interests—Defendants purchased a "75%" interest in "the owners' royalties." TAC ¶¶ 222-228, Ex. F. Even under Plaintiff's definition, then, the royalty leases were securities.

**2. The term assignment is a security.**

In all events, the term assignment of a 1/8 royalty interest that Lisa Hackford sold Scarlet—which entitles Scarlet to 1/8 of the oil produced and saved from the property for the duration of the assignment's term, TAC ¶ 24—is also a security under both statutory definitions.

**1.** First, under the Exchange Act, the assignment is a "certificate of interest or participation in … any oil, gas, or other mineral royalty or lease." 15 U.S.C. § 78c(a)(10). A "certificate of interest" is "[a]n instrument evidencing a fractional or percentage interest in oil and gas production." *Certificate of Interest*, Black's Law Dictionary (rev. 4th ed. 1968). The interest assigned here is exactly that—it evidences a 1/8 royalty interest in production from the lease on the Hackfords' land.

Second, under the Securities Act, the assignment is a "fractional undivided interest in oil, gas, or other mineral rights." 15 U.S.C. § 77b(a)(1). The interest at issue is fractional in two ways: (1) it is a 1/8 royalty interest, entitling the holder to a fraction of oil and gas production, TAC ¶ 24; and (2) the assignment divides the royalty interest temporally, creating an initial interest in Scarlet and a reversionary interest in the estate, TAC Ex. B. The assignment also confirms that it is an undivided interest in mineral rights. TAC Ex. B. (conveying "undivided interests in and to all of the oil royalty, gas royalty and royalty in the other minerals in and under that may be produced from the following described lands ....").
It is therefore a security under the Securities Act definition as well.

Where a mineral interest "plainly constitute[s] a 'fractional undivided interest in … mineral rights' under the Securities Act of 1933, [and] a 'certificate of interest or participation in [a] … mineral royalty or lease' under the Securities Exchange Act of 1934," that is the end of the analysis. *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1580 (10th Cir. 1990), *abrogated on other grounds by Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The assigned royalty interest involved plainly fits both definitions. That is the end of the analysis.

**2.** To avoid that conclusion, Plaintiff previously argued that a fractional royalty interest must be further subdivided at the time of sale to qualify as a security. Doc. 72 at 30. To start, the assignment *did* subdivide the royalty—into an initial interest and reversionary interest. Regardless, neither definition of security contains that requirement. The Securities Act requires only that the interest be fractional, not that it be *further* fractionalized. 15 U.S.C. § 77b(a)(1). And additional splintering of an instrument has no bearing on whether that instrument is a certificate of interest.

The requirement of further subdivision applies only to whether someone is an *issuer*. Generally, "every person who issues or proposes to issue any security" is an issuer. But "with respect to fractional undivided interests in oil, gas, or other mineral rights, the term 'issuer' means the owner of any such right or of any interest in such right (whether whole or fractional) who creates fractional interests therein for the purpose of public offering." 15 U.S.C. § 77b(a)(4). That definition expressly limits the scope of *issuer* liability to someone who creates additional fractional interests.

Plaintiff's argument that a fractional interest in mineral rights is not a security unless further fractional interests are created would make the oil-and-gas-specific definition of

issuer redundant. There would have been no need to specify that the owner of a fractional oil and gas interest is an issuer of securities only when she creates additional fractional interests if the only oil and gas interests that qualify as securities are those that are further subdivided at the time of sale. That precludes Plaintiff's reading. Courts "will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous." *Osborne v. Babbitt*, 61 F.3d 810, 813 (10th Cir. 1995).

The Supreme Court's and Tenth Circuit's repeated instruction to construe the two securities definitions interchangeably further forecloses Plaintiff's reading of the "security" definitions. *See SEC v. Thompson*, 732 F.3d 1151, 1158 n.5 (10th Cir. 2013) ("The Supreme Court has repeatedly ruled that the definitions of 'security' in § 3(a)(10) of the 1934 Act and § 2(1) of the 1933 Act are virtually identical, and should be treated as such in decisions dealing with the scope of the term." (quotation marks omitted)). If "fractional" were read to mean "fractionalized" for purposes of the Securities Act's definition, that would separate the two laws—there would still be no conceivable reason to think that a right to receive part of the production from an oil, gas, or other mineral lease is a "certificate of interest or participation in … any oil, gas, or other mineral royalty or lease" only when that right is further subdivided. 15 U.S.C. § 78c(a)(10). Precedent forecloses any argument that an instrument can be a security under one securities law but not the other.

**3.** Some pre-*Cascade* cases can be read to suggest that something more than fitting the statutory definitions is required for an interest in oil and gas production to qualify as a security. But those cases involve the distinctive context of partial lease interests, where the opinions perceived a unique congressional interest in limiting the security definition. *See, e.g.*, *Woodward v.* Wright, 266 F.2d 108, 112 n.2 (10th Cir. 1959) ("Oil and gas rights … were

notorious subjects of speculation and fraud, but leases and assignments were also indispensable instruments of legitimate oil exploration and production" that Congress did not want to unduly burden). And all pre-dated *Landreth*'s clarification that courts deciding whether an ordinary instrument is a security look only to whether it fits the statutory security definition. *See, e.g.*, *Ballard & Cordell Corp. v. Zoller & Danneberg Exploration, Ltd.*, 544 F.2d 1059, 1063-64 (10th Cir. 1976) ("In *Woodward*[,] this Court recognized that although the legislative policy in the Securities Act of 1933 was to bring all 'securities' within the regulatory scope of the Act without regard to form or legal terminology, such does not render every transaction involving the sale of a fractional interest in oil, gas, or other mineral rights, ipso facto, the sale of a security.").

Before *Landreth*, "confusion … had arisen concerning the meaning of 'security.'" *Penturelli v. Spector, Cohen, Gadon & Rosen, Attorneys at Law*, 779 F.2d 160, 164 (3d Cir. 1985). Courts had interpreted Supreme Court cases involving "unusual instruments not easily characterized as 'securities'" to require them to look beyond the text of the statutory definitions for all instruments. *Landreth*, 471 U.S. at 690. *Landreth* put that confusion to rest, clarifying that where an instrument is "plainly within the statutory definition," there is "no need … to look beyond the characteristics of the instrument to determine whether the Acts apply." *Id.* The Tenth Circuit's decision in *Cascade* then held that *Landreth*'s approach applies to the definitions at issue here: "the phrase 'fractional undivided interest in oil, gas, or other mineral rights' and the phrase 'certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease' appear equally susceptible to plain meaning." 896 F.2d at 1580 n.23.

Thus, the only question is whether the characteristics of the instrument fit the definitions of those terms. The plain meaning of the definitions of "security" in the Securities Act and Exchange Act cover the temporally limited assignment of a 1/8 royalty interest that Scarlet purchased. It is a security.

### B. RICO's securities-fraud bar forecloses Plaintiff's claim.

RICO's securities-fraud bar requires dismissal of a RICO claim if the claim "rel[ies] on *any conduct* that would have been actionable" as securities fraud. 18 U.S.C. § 1964 (emphasis added). It targets the full scope of the allegations on which a plaintiff's claim depends, requiring dismissal if any of the conduct would have been actionable as securities fraud. *See Bixler*, 596 F.3d at 760; *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 731-32 (D. Del. 2003) ("The [securities-fraud clause] acts as an absolute bar to RICO claims predicated upon conduct which could have been actionable as securities fraud."). Plaintiff's RICO claim depends on allegations of fraud in the purchase of term royalty leases and royalty assignments, each of which is a security. Thus, the RICO claim must be dismissed.

It is irrelevant that the complaint alleges mail and wire fraud as predicate acts instead of securities fraud. *Bixler*, 596 F.3d at 760. Even where "conduct may well constitute illegal and fraudulent acts," if it was "undertaken in connection with the purchase of a security," then "it cannot support a civil RICO claim." *Id.* (quoting *Bald Eagle*, 189 F.3d at 330).

## II. Plaintiff's Civil Conspiracy Claim Should Be Dismissed.

A claim for civil conspiracy requires, among other things, "a meeting of the minds on the object or course of action." *Kirkham v. Widdison*, 447 P.3d 89, 99 (Utah Ct. App. 2019) (quotation omitted). In an attempt to satisfy that requirement, Plaintiff claims that Scarlet's agent or employee and its functional owners or officers, conspired to carry out the business's

operations. TAC ¶¶ 303-08. But that is precisely the kind of "conspiracy" claim that the intracompany conspiracy doctrine precludes.

Under the intracompany conspiracy doctrine, a company "cannot be guilty of conspiring with its officers or agents." *Godfredson v. JBC Legal Grp.*, 387 F. Supp. 2d 543, 550 (E.D.N.C. 2005) (cleaned up). That reflects the "general rule" that "it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, because they do not constitute two separate persons." *Hatfield v. Cottages on 78th Cmty. Ass'n*, 2022 WL 2452379, at *5 (10th Cir. July 6, 2022) (Utah law); *see also Podium Corp. Inc. v. Chekkit Geolocation Servs., Inc.*, 2021 WL 5772269, at *7-8 (D. Utah Dec. 6, 2021); *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) ("If all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." (cleaned up)).

That makes sense. If the people acting on a company's behalf can be sued for conspiracy because of the company's operations, then every corporate action becomes a conspiracy, and any two agents of the company co-conspirators. "[A]gency principles, which state that an agent's acts are attributed to the principal," preclude that result. *Podium Corp.*, 2021 WL 5772269, at *8; *see also Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002) ("[A] civil conspiracy is not legally possible where a corporation and its alleged co-conspirators … stand in a principal-agent relationship"); *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 473 (Pa. 1979); *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 237 F. Supp. 3d 1230, 1244 (M.D. Fla. 2017); Robin Miller, *Construction and Application of "Intracorporate Conspiracy Doctrine" as Applied to Corporation and its Employees—State Cases*, 2 A.L.R. 6th 387, § 3 (2005) (the doctrine protects "owners who are individuals").

The intracompany conspiracy doctrine applies here. According to the Third Amended Complaint, Scarlet is an LLC that purchased royalty assignments. TAC ¶ 29. Davis was its agent or employee. TAC ¶ 17. And the New Defendants were its effective owners or officers who supervised "Scarlet's purported managers, contractors, and employees." TAC ¶ 16. Plaintiff alleges actions by those individuals on Scarlet's behalf—for the New Defendants, drafting the solicitation and contract that went out under Scarlet's name, identifying potential "areas and persons" for Scarlet to target its offers, and supervising Scarlet's employees; and for Davis, sending Scarlet's letters and answering inquiries directed to Scarlet. TAC ¶¶ 16, 32, 34, 39, 63, 72.

Their actions are therefore attributed to Scarlet and cannot be the basis for a conspiracy claim. *Ziglar v. Abbasi*, 582 U.S. 120, 152-53 (2017) ("there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity"). None of Plaintiff's efforts to avoid that rule succeed.

To start, it makes no difference that Plaintiff dropped Scarlet from the civil-conspiracy claim in the Third Amended Complaint. *See* TAC, Seventh Claim for Relief. The intracompany conspiracy doctrine applies regardless of whether the entity is named as a conspirator. *See, e.g.*, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352-53 (4th Cir. 2013) ("suing the agents individually does not destroy 'the immunity granted under the doctrine'" (quoting *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985)); *Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001).

Plaintiff's attempt to plead around Scarlet's role by referring to its agents as its "purported managers, contractors, and employees" is equally ineffective. TAC ¶ 16. He "cannot freely allege factual assertions in one instance, and then successfully challenge their

foundation in the next." *Marty v. Mortg. Elec. Registration Sys.*, 2010 WL 4117196, at *6 n. 46 (D. Utah Oct. 19, 2010). His very next allegation states that Davis was, "at all relevant times … an agent … of Scarlet." TAC ¶ 17. And throughout the complaint, it is clear that Scarlet—through its employee Davis—is the entity with which Lisa Hackford communicated and against which Plaintiff's claims, if any is viable, arose. *E.g.* TAC ¶ 34 ("The letters apparently were sent by Davis on behalf of Scarlet").

Regardless, the relevant question is whether the New Defendants acted on Scarlet's behalf or separately from the company. *See Transocean Grp. Holdings Pty Ltd. v. South Dakota Soybean Processors, LLC*, 663 F. Supp. 2d 731, 746 (D. Minn. 2009) (if parties were "taking actions on behalf of" the entity, the intracompany conspiracy doctrine applies); *Thompson Coal*, 412 A.2d at 473. The allegations about their conduct describe them drafting or editing the letter and assignment that went out under Scarlet's name, for Scarlet to purchase term royalty assignments, and supervising Scarlet's employees and agents in the course of its operations. TAC ¶¶ 16, 32, 72; *see also* Exs. A-B (letter and assignment). Those actions are for and attributed to Scarlet.

As discussed below, the only legal theory under which the actions of a company or its agents are imputed to individuals—whether they be employees, agents, or owners—is corporate veil-piercing, which Plaintiff does not and cannot allege. The intracompany conspiracy doctrine thus precludes Plaintiff's attempt to transform Scarlet's business operations, which necessarily were conducted by human hands, into a civil conspiracy. *See Podium*, 2021 WL 5772269, at *8.

## III. The remaining claims against the New Defendants should be dismissed.

Plaintiff's attempts to extend the existing tort and contract claims to the New Defendants fail to state a plausible claim. And the conclusory assertion that they are vicariously liable for Davis's alleged offenses is inadequate and violates basic principles of corporate law. The tort and contract claims against the New Defendants should therefore be dismissed.

### A. Plaintiff does not plausibly plead fraud against the New Defendants.

Plaintiff's fraud and fraudulent-inducement claims against the New Defendants fail for two reasons. First, Plaintiff fails to satisfy Rule 9(b)'s heightened pleading requirement. Second, he does not allege any statement by the New Defendants on which Lisa Hackford could have reasonably relied.

Under Utah law, the elements of fraud and fraudulent inducement are:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Capozzoli v. Madden*, 561 P.3d 727, 735-36 (Utah Ct. App. 2024) (fraud); *Keith v. Mountain Resorts Dev., LLC*, 337 P.3d 213, 225-26 (Utah 2014) (fraudulent inducement). Rule 9(b) requires Plaintiff to plead those elements with specificity as to the "who, what, when, where and how" of each defendant's fraud, including the "time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27

(10th Cir. 2006) (quotation marks omitted), *abrogated on other grounds by Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 587 U.S. 262 (2019).

Plaintiff fails to allege that the New Defendants made any false statement to Plaintiff. The only specific factual allegations directed at the New Defendants is that they, collectively, "created, reviewed, and approved" a template letter and assignment that were later used to create the letter and term assignment that Plaintiff received. TAC ¶¶ 32, 39, 72. That is insufficient. The act of creating, reviewing, and approving a template cannot be characterized as a statement directed at Plaintiff, much less a false statement concerning a presently existing material fact.

Plaintiff also fails to allege the "who" with the specificity that Rule 9(b) requires. Grouping defendants together "without specifying each defendant's specific involvement" does not satisfy Rule 9(b). *Western State Bank v. Cosey, LLC*, 2019 WL 5694271, at *3 (D. Colo. Nov. 4, 2019) (collecting cases). The Third Amended Complaint does not provide a single differentiated allegation against any of the New Defendants. *See, e.g.*, TAC ¶¶ 32, 39, 72 (grouping "Preston, Kulbeth, and Hart" together for every allegation). It therefore fails to satisfy the requirement that they "set forth … the identity of the party making the false statements." *Zoobuh, Inc. v. Savicom, Inc.*, 2018 WL 2768665, at *9 (D. Utah June 8, 2018) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016)).

The failure to trace any specific falsehood to any of the New Defendants is especially troubling because the only specific indication of their involvement—the attached email—shows Preston endeavoring to "eliminate[] any ambiguity" in the assignment template. TAC Ex. C. Plaintiff's fraud theory with respect to the assignment is that it was "deliberately and

materially misleading" despite stating exactly how long it lasts. TAC ¶ 72. Those endeavoring to mislead rarely strive for greater clarity.

What's more, Plaintiff's fraud theory fails to allege reasonable reliance on any statement by the New Defendants. The assignment stated its duration: "ONE Year(s) from the date hereof, and as long thereafter as oil, gas, or other minerals or either of them, is produced or mined from the lands, leases, or wells described herein." TAC Ex. B. That precludes his fraud theory with respect to the letter and assignment.

Under Utah law, "each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it." *Mackley v. Openshaw*, 456 P.3d 742, 749 (Utah 2019) (quoting *John Call Engineering, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987)). That duty applies even where the written instrument might be confusing at first blush. *Id.* at 749 & n.9 (applying the rule despite instructing that "efforts should be made to improve the clarity of the form" involved). Had Lisa Hackford read and understood the "and as long thereafter" phrase in the first sentence of the assignment's second paragraph, as Utah law requires, before signing a half-a-million-dollar contract, there could have been no confusion about the assignment's duration.

Faced with this issue in Defendants' earlier motion to dismiss, Plaintiff focused on Davis's alleged misrepresentations, arguing that his statements, as alleged, created an issue of fact as to whether Lisa's reliance was unreasonable. Doc. 23 at 33. This Court denied the motion to dismiss, Doc. 37, and Defendants accept that ruling for present purposes.

But Plaintiff's fraud claim against the New Defendants requires actionable false statements *by them*. *Chilton v. Young*, 2011 WL 5143061, at *6 (D. Utah Oct. 4, 2011) (a plaintiff "must plead with particularity the elements of fraud as against each defendant").

Because the Third Amended Complaint, at most, connects the New Defendants to the letter and assignment, and the assignment states its duration, the fraud claims against the New Defendants should be dismissed.

**B. Plaintiff's contractual claims against the New Defendants are not viable because they are not parties to the assignment.**

Plaintiff's contract, the assignment, is between his sister and Scarlet. *See* TAC Ex. B. Yet he appears to bring contract claims—counts three through six—against the New Defendants, who are not parties to the contract. Those claims fail as a matter of law. With minor exceptions that do not apply here, contractual remedies are available only against contractual counterparties.

"It is well-established that, 'unless a plaintiff can recover on a contract as a third party beneficiary or an assignee,' only parties to the contract can sue and be sued under the contract." *Premier Sleep Sols., LLC v. Sound Sleep Med., LLC*, 2021 WL 1192579, at *9 (D. Utah Mar. 30, 2021) (quoting *Holmes Dev., LLC v. Cook*, 48 P.3d 895, 908 (Utah 2002)); *see also Surgenex, LLC v. Predictive Therapeutics, LLC*, 462 F. Supp. 3d 1160, 1168 (D. Utah 2020) ("Under Utah law, '[a]s a general rule, none is liable upon a contract except those who are parties to it.'" (quoting *Shire Dev. v. Frontier Invs.*, 799 P.2d 221, 223 (Utah Ct. App. 1990))). And unilateral mistake, estoppel, and unconscionability are all contract theories. *See, e.g.*, *Guardian State Bank v. Stangl*, 778 P.2d 1, 4-7 (Utah 1989) (unilateral mistake); *Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077, 1088 (Utah 1999) (estoppel); *Sosa v. Paulos*, 924 P.2d 357, 360 (Utah 1996) (unconscionability); *see also* Restatement (Second) of Contracts §§ 90, 153, 208.

As a result, because Scarlet signed the contract, it is the proper defendant for Plaintiff's contract claims. The New Defendants are not parties to the contract, so the contract claims against them should be dismissed.

### C. The conclusory assertion of vicarious liability does not justify the claims against the New Defendants.

That leaves only Plaintiff's conclusory assertion that the New Defendants are vicariously liable for Davis's alleged torts. TAC ¶ 16. In an attempt to avoid the obvious problem with attempting to hold an LLC's owners and officers vicariously liable for the actions of the LLC, Plaintiff has dropped the claim that the New Defendants are vicariously liable for Scarlet's actions. *Compare* Second Amended Complaint ¶ 17 *with* TAC ¶ 16. But the corporate veil cannot be pierced simply by pretending the corporation does not exist. Whether Plaintiff acknowledges Scarlet or not, his vicarious-liability theory flies in the face of basic corporate-law principles. Scarlet is a limited liability company, and foundational principles of corporate separateness preclude holding the New Defendants vicariously liable for the alleged torts of their LLC's employees or agents. *See* Utah Code Ann. § 48-3a-304; *cf. Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."). Plaintiff's conclusory assertions of vicarious liability provide no basis for disregarding that foundational principle.

## IV. The Third Amended Complaint makes no allegations to support the fraud and contract claims against the Family Partnerships.

The Third Amended Complaint appears to bring fraudulent-inducement and contract claims against the Family Partnerships and unidentified John Doe entities. *See* TAC at 32 n.2 (noting that all claims are pleaded against all defendants unless they say otherwise). Those claims should be dismissed as well.

Plaintiff levels no allegations against any of those entities beyond the claim that they received distributions from Scarlet. TAC ¶¶ 13, 160. Receipt of distributions is not enough to state a claim for fraudulent inducement, unilateral mistake, estoppel, or unconscionability. Fraudulent inducement requires allegations that the defendant made a false statement of fact on which the plaintiff relied to his detriment. *Keith*, 337 P.3d 213, 225-26 (Utah 2014). And unilateral mistake, estoppel, and unconscionability are contract claims that require, at minimum, a contract. *Supra* at pg. 18. The allegations that the Family Partnerships and John Does received distributions from an LLC do not satisfy either requirement. The fraudulent-inducement and contract claims should therefore be dismissed as against the Family Partnerships and John Does.

## CONCLUSION

For those reasons, Defendants ask that this Court dismiss Plaintiff's RICO and civil-conspiracy claims against all defendants, and all but the unjust-enrichment claims against Preston, Kulbeth, Hart, the Family Partnerships, and the John Does.

Respectfully submitted,

*/s/ Stevan R. Baxter*
Stevan R. Baxter
SKOUBYE NIELSON JOHANSEN & BAXTER, LLC

Corey F. Wehmeyer, (admitted pro hac vice)
Brock R. Skelley, (admitted pro hac vice)
Brent Bauer, (admitted pro hac vice)
Stephanie Dishman, (admitted pro hac vice)
SANTOYO WEHMEYER P.C.
IBC Highway 281 North Centre Building
12400 San Pedro Avenue, Suite 300
San Antonio, Texas 78216
Telephone: (210) 998-4200
Facsimile: (210) 998-4201
Email: cwehmeyer@swenergylaw.com
Email: bskelley@swenergylaw.com
Email: bbauer@swenergylaw.com
Email: sdishman@swenergylaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2026, I electronically transmitted the foregoing document to the clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Stephen P. Horvat
*shorvat@aklawfirm.com*
FABIAN VANCOTT
95 S. State Street, Ste. 2300
Salt Lake City, Utah 84111

*/s/ Dusty Fance*
Dusty France